UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EDUARDO ALVAREZ, *et al.*<br><br>Defendant. | Case No. 14-cr-00120-EMC<br><br>**REDACTED VERSION**<br><br>**ORDER DENYING DEFENDANT VASQUEZ'S MOTION TO SUPPRESS**<br><br>Docket No. 616 |

Mr. Vasquez moves to suppress evidence seized following a 2011 search of his cell phone records, and to suppress a firearm seized during a 2010 arrest. Docket No. 616 ("Motion," "Vasquez Exhibit A," or "Vasquez Exhibit B". The Government opposes Mr. Vasquez's motion, arguing that he had no subjective or objectively reasonable expectation of privacy in his cell phone records, and that in any event the good faith exception applies to the search. Docket No. 639. For the reasons discussed herein, the Court **DENIES** the Motion to Suppress.

A.  Facts

On February 19, 2010, Mr. Vasquez was arrested for being a felon in possession of a firearm. Mot. at 1. He was arrested after appearing at his ex-girlfriend's house, purportedly "stalking" her. Opp. at 7. His ex-girlfriend called the police, who encountered Mr. Vasquez enroute. *Id*. They detained Mr. Vasquez, who consented to a search. *Id*. at 7-8. In the course of this search, the police found a gun. *Id*. at 8. Mr. Vasquez attempted to flee, and was arrested. *Id*. He was subsequently charged with being a felon in possession of a firearm, and pled guilty to this charge. Mot. at 1.

In March 2012, federal prosecutors and officers sought an order requiring MetroPCS to release Mr. Vasquez's cell phone records. Mot. at 1. The order was sought under 18 U.S.C.

Section 2703. ("Section 2703")  The order instructed MetroPCS to release ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Gov't. Ex. C.  MetroPCS was ordered to produce about ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id*.  Pursuant to the SCA, the Government sought a 90-day delay to its required notification period.  Opp. at 6.  The delay was granted by the magistrate judge.

B. Statutory Background

The Stored Communications Act, 18 U.S.C. Sections 2701 *et seq*. ("SCA") permits law enforcement to obtain stored wire and electronic communications.  It may do so either by means of a warrant or by receiving a court order.  § 2703(c).  To obtain the court order, officers need only "offer[] specific and articulable facts showing that there are reasonable grounds to believe" the records "are relevant and material to an ongoing investigation." § 2703(a).  The SCA permits the government to obtain the contents of a message more than 180 days old, if it obtains a court order and provides notice to the target of the order.  § 2703(b). The government may obtain records such as CSLI if it obtains a warrant or court order, or with the subscriber's consent.  § 2703(c).  No notice is required for these records.  *Id*.  However, the government may apply to provide delayed notice.  § 2703(d).  It may obtain other records with only the court order.  § 2703(a).

C. Analysis

1. Legal Standard

The Fourth Amendment affords citizens the right "to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures."  U.S. Const. Amend. IV; *United States v. Jones*, __ U.S. __, 132 S. Ct. 945 (2012) ("*Jones*").  The Fourth Amendment applies where "the government intrudes upon an expectation of privacy that society is prepared to consider reasonable."  *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1027 (9th Cir. 2012).  Where a search does not involve a physical trespass, the court applies the analysis used in *Katz v. United States*, 389 U.S. 347, 357 (1967).  *See Jones*, 132 S. Ct. at 953.

The *Katz* inquiry is laid out in that case's concurrence, summarizing the majority's opinion.  *See Katz*, 389 U.S. at 361.  As explained by later decisions of the Supreme Court,

> Th[e] inquiry . . . normally embraces two discrete questions. The first is whether the individual, by his conduct, has 'exhibited an actual (subjective) expectation of privacy,' . . . whether, in the words of the *Katz* majority, the individual has shown that "he seeks to preserve [something] as private.' . . . The second question is whether the individual's subjective expectation of privacy is 'one that society is prepared to recognize as "reasonable," . . . whether, in the words of the *Katz* majority, the individual's expectation, viewed objectively, is 'justifiable' under the circumstances.

*Smith v. Maryland*, 442 U.S. 735, 740 (1979) (citations omitted).[1]  "The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *See Rakas v. Illinois*, 439 U.S. 128, 132 n.1 (1978).

If the above test is met, a warrantless search or seizure is "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Katz*, 389 U.S. at 357. The Government must prove, by a preponderance of the evidence, that the warrantless search falls into one of these exceptions. *See United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001).

2. 2012 Search of Cell Site Information

Mr. Vasquez contends that the collection of cell site location information ("CSLI") violated his Fourth Amendment rights. The Government responds that collection of CSLI is not a "search" within the meaning of the Fourth Amendment and, even if it were, Mr. Vasquez had no reasonable expectation of privacy in his CSLI. The Government also contends the good faith exception applies.

Mr. Vasquez argues that a search of CSLI is a "search" within the meaning of the Fourth Amendment, because he had a reasonable expectation of privacy in the location of his cell phone. *See* Mot. at 2, 9. The Government responds that Mr. Vasquez did not have a subjective expectation of privacy in the data collected here. *See* Opp. at 10. The Court agrees with Mr. Vasquez.

---

[1] In her concurrence in *Jones*, Justice Sotomayor observed that technology allows the government to track citizens in a way that "may alter the relationship between citizen and government in a way that is inimical to democratic society." *Jones*, 132 S. Ct. at 956. In light of this, she would have courts consider whether citizens "reasonably expect" the type of intrusion performed by the government. *Id*. She would also do away with jurisprudence's traditional "treat[ment of] secrecy as a prerequisite for privacy." *Id*. at 957.

3

1        a.    <u>Mr. Vasquez Had an Objectively Reasonable Expectation of Privacy</u>

Three courts of this District have found that individuals have an objectively reasonable expectation of privacy in CSLI. *See In re Application for Tel. Info. Needed for a Criminal Investigation*, 119 F. Supp. 3d 1011 (N.D. Cal. 2015) (Koh, J.); *United States v. Cooper*, No. 13-CR-00693-SI-1, 2015 WL 881578 (N.D. Cal. Mar. 2, 2015) (Illston, J.); *United States v. Williams*, No. 13-CR-00764-WHO-1, 2016 WL 492934, at *1 (N.D. Cal. Feb. 9, 2016) (Orrick, J.). As Judge Koh explained, "(1) an individual's expectation of privacy is at its pinnacle when government surveillance intrudes on the home; (2) long-term electronic surveillance by the government implicates an individual's expectation of privacy; and (3) location data generated by cell phones, which are ubiquitous in this day and age, can reveal a wealth of private information about an individual." 119 F. Supp. 3d at 1022-23. Based on these distilled principles, Judge Koh concluded that individuals expect their CSLI to remain private, and that this is an expectation society is prepared to recognize as reasonable.

Judge Koh denied a federal agent's application for a court order to search CSLI, and so the actual amount of information that could be collected from such a search was not before her. This case illustrates how great is the "wealth of private information" that may be gleaned from CSLI:

▮

*See* Gov't. Ex. H. The volume of location information obtained via CSLI underscores the objective reasonableness of the expectation of privacy here. *See, e.g., Cooper*, 2015 WL 881578 at *8 (noting a phone transmits "enormous amounts of data, detailing the phone-owner's physical location"); *cf. Jones*, 132 S. Ct. at 948 (noting the GPS device attached to the target's car "relayed more than 2,000 pages of data over the 4-week period"); *Riley v. California*, 134 S. Ct. 2473, 2489-90 (2014) (finding a warrantless search of a cell phone violated Fourth Amendment rights because, *inter alia*, of the wealth of information that can be retrieved from the phone).

The Court agrees with Judge Koh's, Judge Illston's, and Judge Orrick's analyses, and holds that Mr. Vasquez's expectation of privacy was objectively reasonable.

      b.    <u>Mr. Vasquez Had a Subjective Expectation of Privacy</u>

In his Reply, Mr. Vasquez contends that he had a subjective expectation of privacy. Reply

4

at 2. The Government argues that he could not have had such an expectation, because he registered his phone under an alias. Opp. at 11-12.

Neither the Ninth Circuit nor this District has ruled on whether a defendant has a subjective expectation of privacy when he registers his phone under an alias. *See United States v. Lozano*, 623 F.3d 1055, 1064 (9th Cir. 2010) (O'Scannlain, J., concurring) (noting, in a drugs-by-mail case, that the Ninth Circuit has not ruled on whether an alias undercuts an expectation of privacy). The Ninth Circuit case that comes closest to this issue dealt with the search of physical premises.

In *United States v. Broadhurst*, the Ninth Circuit held the defendants had a subjective expectation of privacy in their property, relying in part on defendants' purchasing property under a false name. 805 F.2d 849, 854 (9th Cir. 1986). Narcotics agents had flown over the defendants' property after receiving a tip about a marijuana growing operation, but did not see anything through the greenhouse's roof. *Id*. at 850. However, they were able to see plants "consistent with marijuana" through the sides of the greenhouse. *Id*. The defendants challenged the aerial surveillance. *Id*. at 851.

The court held that defendants had exhibited "a subjective expectation of privacy in the interior of the greenhouse." *Id*. at 854. Defendants had "attempted to block all views of the interior of the greenhouse," regularly checked whether the public could see in, and "used false names in the purchase of the property and in transactions related to the greenhouse." *Id*. The court found these "strenuous measures" suggested defendants expected privacy, and rejected the government's contention "that defendants' measures show that they 'expected surveillance' and thus could have had no subjective expectation of privacy." *Id*. at 854 & n.5 (deriding the government's argument as one that would "turn Katz on its head"). Hence, it appears that use of a false name, if anything, underscores the subjective expectation of privacy.

A number of cases outside the Ninth Circuit support Mr. Vasquez's position. *See, e.g., United States v. Pitts*, 322 F.3d 449, 458-59 (2003) (rejecting the idea that using an alias strips

property of any Fourth Amendment protection).[2] Like *Broadhurst*, these cases do not involve cell phones. However, they demonstrate a similar reluctance to abolish any Fourth Amendment protection on the sole ground that a person uses an alias. The Seventh Circuit's analysis is particularly instructive on this point.

In *Pitts*, the defendants sent packages to fictitious names. *Pitts*, 322 F.3d at 451. When postal inspectors obtained a warrant to search one of these packages, they found drugs. *Id.* at 453. The defendants moved to suppress, and the government argued they did not have a reasonable expectation of privacy in packages sent to and from fictitious names. *Id.* at 453-54. Though its ruling was based on other issues, the Seventh Circuit separately analyzed and rejected the government's argument. *Id.* at 457-59. The court noted that the Supreme Court has previously refused to deny constitutional protections to authors who remain anonymous. *Id.* at 458 (citing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-43 (1995) (holding anonymous authors were still protected by the First Amendment)). It also listed "a number of legitimate reasons" why someone might want to use a false name for mail purposes:

> Some authors and journalists, such as the incomparable Ann Landers, whose real name was Eppie Lederer, employ a pseudonym in their professional life. This is a common and unremarkable practice. In other situations, a celebrity may wish to avoid harassment or intrusion; a government official may have security concerns in using her real name or home address to receive mail; a business executive in merger talks might worry about potential investors misusing the information gained through the mail to manipulate the securities markets.

*Id.* It refused to allow "criminals [to] forfeit the privacy interests of all persons by using" false names, or to allow searches to be justified after-the-fact if the search allowed the government to

---

[2] *See also United States v. Newbern*, 731 F.2d 744, 748 (11th Cir. 1984) (defendants retained expectation of privacy in motel room, though room was registered under an alias, where they used room strictly for lodging purposes); *United States v. Villarreal*, 963 F.2d 770, 775 (5th Cir. 1992) (privacy interest continued even where drums of marijuana were sent under "fictitious names in an effort to escape detection," where defendants "consistently acted as if they were the ones who were to receive the drums"); *cf. United States v. Johnson*, 584 F.3d 995, 1002 (10th Cir. 2009) (finding no expectation of privacy where alias was a stolen identity, but noting "some courts have found an expectation of privacy when an individual uses an alias or a pseudonym . . . because it is not necessarily illegal to use a pseudonym to receive mail").

6

show that a false name had been adopted for criminal purposes. *Id*. at 458-59. While the court found defendants had surrendered their Fourth Amendment claim, it did so on grounds of abandonment rather than adopting the broad rule suggested by the government. *Id*. at 459.

Like the *Broadhurst* defendants, Mr. Vasquez's registering his phone under an alias may show that he thought surveillance was possible, but it also shows that he tried to prevent such surveillance. Ninth Circuit precedent suggests Mr. Vasquez evidenced a subjective expectation of privacy. Further, as in *Pitts*, a person may register a phone under an assumed name for several legitimate reasons: to match the name used professionally, to avoid stalkers, or even just to stop getting incessant calls for political donations. Using a phone registered under someone else's name, then, is not automatically nefarious.

While the Government cites several cases that hold registering a phone under an alias "undercuts any claim that [the defendant] has a subjective privacy interest in the cell phone," those cases are not binding on this Court. Mot. at 11 (citing *United States v. Suarez-Blanca*, 2008 WL 4200156, at *7 (N.D. Ga. 2008)). Nor are these cases particularly persuasive; the only appellate-level decision cited by the Government gave no analysis of *why* the defendant had given up his expectation of privacy by using an alias. *See United States v. Davis*, 785 F.3d 498, 539 n.6 (11th Cir. 2015) (Martin, J., dissenting) ("The majority does not explain why it believes that 'the fact that Davis registered his cell phone under a fictitious alias tends to demonstrate his understanding that such cell tower location information is collected . . . may be used to incriminate him.'"); *see also United States v. Madison*, No. 11-60285-CR, 2012 WL 3095357, at *8 (S.D. Fla. July 30, 2012) (stating, without analysis, that "the use of prepaid cell phones under false names . . . further demonstrates the common knowledge that communications companies regularly collect and maintain all types of non-content information").

Mr. Vasquez had a subjective and an objectively reasonable expectation of privacy in his CSLI. Thus, the search of that CSLI was a search within the meaning of the Fourth Amendment. Because no warrant was obtained and the government has not established any constitutional exception to the warrant requirement, the search violated the Fourth Amendment.

### c. The Good Faith Exception Applies

Where a warrant is unsupported by probable cause, evidence obtained from the warrant's execution may be excluded. *Weeks v. United States*, 232 U.S. 383. However, the "good faith" exception to this general rule applies where an officer acted "in objectively reasonable reliance" on the warrant. *United States v. Leon*, 468 U.S. 897 (1984). There are also exceptions to the exception: where the affiant misled the magistrate, where the magistrate abandoned his or her judicial role, where the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," and where the warrant is so vague as to be facially deficient. *Id.* at 922-23. Mr. Vasquez argues that the good faith exception does not apply here because the Ninth Circuit had not specifically authorized the search of CSLI. Mot. at 15.

Though *Leon* deals with a warrant, courts have also applied the good faith exception to other court orders. *See Cooper*, 2015 WL 881578 at \*9 (applying Leon, and quoting an Eleventh Circuit decision describing the difference between a warrant and a court order as "semantic") (quoting *United States v. Davis*, 754 F.3d 1205, 1218 (11th Cir.), *on reh'g en banc aff'd in part,* 785 F.3d 498 (11th Cir. 2015)); *Williams*, 2016 WL 492934, at \*2 (applying the good faith exception). In an *en banc* decision, the Eleventh Circuit explained that "[t]he SCA does not lower the bar from a warrant to a § 2703(d) order" because, *inter alia*, it requires the government to obtain the approval of "a neutral and detached magistrate." *United States v. Davis*, 785 F.3d 498, 505 (11th Cir.). Because a judge authorized the search, it is appropriate to apply *Leon* to a Section 2703 court order.

#### i. The Officers Acted Reasonably

In *Davis v. United States*, 564 U.S. 229 (2011) ("*Davis*"), the Supreme Court analyzed whether the exclusionary rule applied "when the police conduct a search in compliance with binding precedent that is later overruled." 564 U.S. at 2423. The police in that case acted under a generally accepted interpretation of a Supreme Court decision. *Id.* at 2424. Two years later, the Supreme Court clarified the decision on which the police had relied. The Eleventh Circuit applied the new rule in the defendant's appeal, and held his Fourth Amendment rights had been violated. *Id.* at 2426. On appeal from that decision, the Supreme Court explained that the point of the

exclusionary rule was deterrence, and that there was no deterrent value to discouraging the police from relying on what seemed at the time to be good precedent. *Id*. at 2427-28. The Court held that where a police officer relies on binding precedent, she is "act[ing] as a reasonable officer would and should act." *Id*. at 2429.

In reaching this decision, the Supreme Court relied in part on *Illinois v. Krull*, 480 U.S. 340 (1987). In *Krull*, the defendant violated an Illinois statute that required auto dealers to allow the police to inspect the dealers' records "at any reasonable time during the night or day." 480 U.S. at 343. Relying on that statute, an officer searched the records of an auto yard, found that some vehicles were stolen, and arrested the defendants. *Id*. The next day, a federal district court found the statute unconstitutional. *Id*. The Supreme Court held that the exclusionary rule did not apply, because the officer had acted "in objectively reasonable reliance on a statute," and excluding the evidence would have little deterrent effect. *Id*. at 349-50. Because the statute had not been invalidated at the time the officer relied on it, his conduct was objectively reasonable and the evidence should not be excluded. *Id*. at 356, 360.

Here, the officers likewise relied on an apparently valid statute – the SCA – which authorized the collection of CSLI. At the time the search was executed, the SCA had not been invalidated by the Ninth Circuit or the Supreme Court. Indeed, in the one case before the Ninth Circuit in which CSLI was at issue, the Ninth Circuit expressly did *not* decide the propriety of obtaining CSLI. *See United States v. Reyes*, 435 F. App'x 596, 598 (9th Cir. 2011) (stating it would ignore the CSLI question because it had not been raised before the district court, and so was not properly before the Ninth Circuit on appeal). And while Mr. Vasquez claims the Ninth Circuit called the constitutionality of CSLI searches "troubl*ing*," it actually said "trouble*some*" – as in complicated and difficult. *Id*. ("The government's use at trial of Reyes's cell site location information raises important and troublesome privacy questions not yet addressed by this court."). The Ninth Circuit thus had not held the SCA to be unconstitutional at the time of the officers' search, and there was no strong indication that it would eventually do so.

Nor was there any other substantial precedent suggesting the SCA was inconsistent with the Fourth Amendment. The officers applied to collect Mr. Vasquez's CSLI in March 2012.

9

Vasquez Ex. A at PH-0249. Decisions by Judge Illston and Judge Koh finding the Fourth Amendment required a full warrant were not issued until 2015, three years *after* Mr. Vasquez's CSLI was collected. Judge Orrick's decision was issued in 2016. The only case Mr. Vasquez cites that pre-dates the collection of his CSLI is *Jones*. But that decision was issued in January 2012, and was ostensibly cabined to situations where the government had trespassed on private property. It is not until *Riley*, 134 S. Ct. 2473, two years after Mr. Vasquez's CSLI was searched, that *Jones* was read more broadly to potentially protect location information (and even then, *Riley* relied on *Jones*'s concurrence rather than the majority opinion, *see id*. at 2490). There is simply no support for Mr. Vasquez's argument that the officers "should have known" the SCA was unconstitutional.

Moreover, the officers relied on an apparently valid order from a magistrate judge; their reliance on a judicially sanctioned search warrants deference under *United States v. Leon,* 468 U.S. 897 (1984). In *Leon*, officers obtained a search warrant which was later held not to be supported by probable cause. 468 U.S. at 902-03. The Court reasoned that, if a magistrate "performed his neutral and detached function," if the affidavit issued to secure the warrant was not false, and if there was enough in the affidavit to allow the magistrate to determine probable cause, then excluding evidence would serve no deterrent function. *Id*. at 914-15. Where all these are true, and the officer acted within the search warrant's scope, "there is no police illegality and thus nothing to deter." *Id*. at 920-21. In *Cooper*, Judge Illston agreed with the Eleventh Circuit that the difference between relying on a warrant and an order was "semantic." 2015 WL 881578 at *9. There was "nothing in the record to suggest that [the magistrate] 'abandoned its detached and neutral role,'" nor anything to suggest the government misled the magistrate while applying for the order. *Id*. Because the magistrate and the officers had acted appropriately, and there was no binding precedent that would have notified an officer that the search was illegal, see *infra*, she applied the good faith exception. *Id*. Judge Orrick followed suit when asked to decide the same issue. *See Williams*, 2016 WL 492934 at *2.

Mr. Vasquez does not argue that the magistrate here acted in a biased or interested fashion, and there is nothing in the record to indicate that the magistrate "wholly abandoned his judicial

1   role." *Leon*, 468 U.S. at 923.  He does not argue the magistrate was misled, that Section 2703's
2   requirement for "specific and articulable facts" was not met, or that the order was so vague as to
3   be facially deficient.[3]  Instead, Mr. Vasquez's only reason why the good faith exception should not
4   apply is because the law was unsettled at the time the order was requested, and the Court should
5   .encourage law enforcement to "err on the side of constitutional behavior."  Mot. at 15-16.  But as
6   noted above, there was no indication at the time the order was issued that the SCA was
7   unconstitutional, and the officers relied on an apparently valid statute.  Exclusion of evidence
8   obtained in 2012 would serve no significant deterrent purposes here.

Because the officers reasonably relied on an apparently valid statute in obtaining a judicial
order authorizing the collection of CSLI, the good faith exception applies here.

       ii.   <u>The Fact That Prosecutors Sought the Order Does Not Change the Outcome</u>

Mr. Vasquez argues that in this case, the order was sought by prosecutors not police officers, and that in applying the good faith doctrine United States Attorneys should be held to a higher standard than police officers; because of this higher standard, the prosecutors should have known better than to rely on divided case law.  *Id*. at 16.

As the Government notes, Opp. at 27, Mr. Vasquez's briefs cite no case law holding prosecutors to a higher standard.  In *United States v. Pembrook*, 119 F. Supp. 3d 577 (E.D. Mich. 2015), the defendant argued that CSLI should be suppressed.  The court noted that "at the time the Government obtained the [CSLI] in this case, there was no binding authority holding that obtaining [CSLI] . . . required a warrant supported by probable cause.  Further, as will also be explained, the persuasive authority available at the time was mixed."  *Id*. at 587.  The court noted the defendant's argument that an attorney should be held to have "a deeper understanding of Fourth Amendment jurisprudence," but did not hold the prosecutor to any higher standard.  *Id*. at

---

[3] Indeed, Mr. Vasquez states that the prosecutors had "the option of obtaining a warrant supported by probable cause," and argues at length about the amount of work prosecutors put into the application for a court order.  Mot. at 16-17.  Neither of these arguments establish the order was facially deficient.  The possibility of applying for a full warrant does not constitute an exception to *Leon*.

11

1  595. In *United States v. Davis*, 785 F.3d 498 (11th Cir. 2015), the Eleventh Circuit applied the
2  good faith exception to "the prosecutors and officers," without holding prosecutors to a higher
3  standard. 785 F.3d at 518 n.20. The Eleventh Circuit held that "the prosecutors and officers . . .
4  acted in good faith . . ."; it did not suggest that prosecutors should be held to a higher standard in
5  applying the good faith exception. *United States v. Davis*, 785 F.3d at 518 n. 20; *cf. United States
6  v. Underwood*, 725 F.3d 1076, 1087-88 (9th Cir. 2013) (noting that, where a prosecutor signs off
7  on an affidavit before the warrant is sought, this provides evidence of good faith even if the
8  warrant is later invalidated).

Because the good faith exception applies here,[4] Mr. Vasquez's motion to suppress the CSLI is **DENIED**.

### 3. 2012 Search of Text Messages

Mr. Vasquez also moves to suppress the text messages seized in the 2012 search. Mot. at 9. The Government concedes that Mr. Vasquez had a reasonable expectation of privacy in the content of his text messages, but contends that the good faith exception applies. Opp. at 24-25. Mr. Vasquez counters that the good faith exception should not apply, because content of communication has long received Fourth Amendment protection. Mot. at 9. The Court finds the good faith exception applies.

While Mr. Vasquez is correct that content is generally protected under the Fourth Amendment, *see Katz*, 389 U.S. at 353, the SCA (and the context of the storage of text messages) adds a wrinkle to the analysis. The wrinkle is whether the portions of the SCA that permit law enforcement to obtain content can be viewed as Congress applying the third-party doctrine to content. The third-party doctrine stems from the Supreme Court's decisions in *Smith v. Maryland*, 442 U.S. 735 (1979) and *United States v. Miller*, 425 U.S. 435 (1976). In *Smith*, the Court held that people do not expect privacy in the phone numbers they dial, because "[t]elephone users . . . typically know that they must convey numerical information to the phone company," and that the phone company can and does record those dialed numbers. 442. U.S. at 743. Even if the phone

---

[4] Judges Illston and Orrick also found the good faith exception applied, while holding a warrantless search violated the Fourth Amendment.

company did not record the numbers, the defendant had no expectation of privacy because he "voluntarily conveyed to [the phone company] information that it had facilities for recording and was free to record." *Id*. at 745. In *Miller*, the Court similarly held that a person has no reasonable expectation of privacy records shared with a bank, such as "financial information and deposit slips," because that information is "voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business." 425 U.S. at 442. Once turned over to the bank, these documents were no longer the defendant's "private papers," and he could "assert neither ownership nor possession" over them. *Id*. at 440. In both cases, the Court noted that the information at hand was different from "the contents of communications" or "confidential communications," but did not analyze this point. *Smith*, 442 U.S. at 741; *Miller*, 435 U.S. at 442.[5]

In *United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010), the Sixth Circuit examined the interplay of the third-party doctrine and the protection given to content. In the case, the government obtained the defendant's emails from his internet service provider ("ISP"). The court held that "[a]n ISP is the intermediary that makes email communication possible." *Id*. at 286. Because the ISP was a mere intermediary, rather than someone to whom the defendant intended to transmit the content of his emails, the third-party doctrine did not apply and the government had conducted a search within the meaning of the Fourth Amendment. *Id*. However, contrary to Mr. Vasquez's arguments at the hearing, Warshak did not clearly indicate that electronic content is always protected when it is retrieved from a third party. First, the Sixth Circuit noted that its "conclusion may be attacked in light of the Supreme Court's decision in *United States v. Miller*," though it found *Miller* distinguishable. *Id*. at 287-88. Second, it held that "if [an] ISP expresses an intention to 'audit, inspect, and monitor,' its subscriber's emails, that might be enough to render an expectation of privacy unreasonable." *Id*. at 287.

While Mr. Vasquez is correct in arguing that *Warshak* extends *Katz*'s general protections to electronic content, the limits of the third party doctrine was not clearly defined. Indeed, the *Warshak* court held that the SCA's provisions allowing for a warrantless search of Warshak's

---

[5] *See, e.g., Thompson v. Chicago Bd. of Educ.*, No. 14-CV-6340, 2016 WL 362375, at *8 (N.D. Ill. Jan. 29, 2016) (noting the third-party doctrine does not apply to content).

13

1  emails' content were not "so conspicuously unconstitutional as to preclude good faith reliance."
2  *Id*. at 289.  The court so held in part because the SCA had not been found unconstitutional in the
3  34 years of its existence, and because the court had been "required to navigate" a "complicated
4  thicket of issues" to decide that the SCA was unconstitutional as applied to email content.

5  Before the search here was conducted, a number of courts (none of which were within the
6  Ninth Circuit) followed *Warshak*.[6]  However, as many courts, including one within this District,
7  noted the SCA's provisions regarding content without passing on the constitutionality of the
8  statute and without even expressing concern.[7]

9  Since the search conducted here, the balance has tipped more and more in favor of
10 *Warshak*'s reasoning.  *See, e.g., Vista Mktg., LLC v. Burkett*, 812 F.3d 954, 970 (11th Cir. 2016)
11 (agreeing with *Warshak* that the government must "demonstrate probable cause . . . to review the
12 content of stored electronic communications"); *In re Applications for Search Warrants for Info.*
13 *Associated with Target Email Accounts/Skype Accounts*, No. 13-MJ-8163-JPO, 2013 WL
14 4647554, at *4 (D. Kan. Aug. 27, 2013) ("The Court finds the rationale set forth in *Warshak*
15 persuasive and therefore holds that an individual has a reasonable expectation of privacy in emails
16 or faxes . . . .").  Moreover, *Warshak* has been cited in this District specifically for the principle

---

[6] *See United States v. Lucas*, 640 F.3d 168, 178 (6th Cir. 2011) (citing *Warshak* for the principle that individuals have a reasonable expectation of privacy in their emails); *United States v. Hanna*, 661 F.3d 271, 287 n.4 (6th Cir. 2011) (same); *United States v. Richards*, 659 F.3d 527, 538 n.7 (6th Cir. 2011) (same); *In re U.S. for an Order Authorizing the Release of Historical Cell-Site Info.*, 809 F. Supp. 2d 113, 125 (E.D.N.Y. 2011) (same); *Coughlin v. Town of Arlington*, No. CA 10-10203-MLW, 2011 WL 6370932, at *11 (D. Mass. Dec. 19, 2011) (same); *Clements-Jeffrey v. Springfield, Ohio*, No. 3:09-CV-84, 2011 WL 3207363, at *3 (S.D. Ohio July 27, 2011) (same).

[7] *See Doe v. U.S. S.E.C.*, No. 3:11-MC-80184 CRB, 2011 WL 4593181, at *4 (N.D. Cal. Oct. 4, 2011) (noting differing treatment of content and non-content, but not questioning constitutionality of the SCA); *see also United States v. Clenney*, 631 F.3d 658, 666 (4th Cir. 2011) (noting the SCA's different procedures for content and non-content records); *United States v. Orozco*, 456 F. App'x 149, 152 (3d Cir. 2012); *In re Application of U.S. for an Order Pursuant to 18 U.S.C. 2705(b)*, 866 F. Supp. 2d 1172, 1174 (C.D. Cal. 2011) (same);  *Hubbard v. MySpace, Inc.*, 788 F. Supp. 2d 319, 321-22 (S.D.N.Y. 2011) (same); *In re Application of U.S. for an Order Authorizing Disclosure of Location Info. of a Specified Wireless Tel.*, 849 F. Supp. 2d 526, 573 n.27 (D. Md. 2011) (same); *In re Application of the U.S. for an Order Pursuant to 18 U.S.C. sec. 2703(d)*, 830 F. Supp. 2d 114, 127 (E.D. Va. 2011); *Keck v. Virginia*, No. 3:10CV555, 2011 WL 4573473 (E.D. Va. Sept. 30, 2011), *aff'd,* 470 F. App'x 127 (4th Cir. 2012); *In re s 2703(d)*, 787 F. Supp. 2d 430, 436 (E.D. Va. 2011) (noting the SCA grants more protection to content than to non-content).

that content is protected even when a search is conducted under the SCA. *See In re Application for Tel. Info. Needed for a Criminal Investigation*, 119 F. Supp. 3d at 1030; *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1042 (N.D. Cal. 2014). Thus, while today the Government can no longer be said to be unaware that searching content requires a warrant, even under the SCA, it was not obvious that the Fourth Amendment applied at the time the search was conducted in 2012.

As with its CSLI, the officers acted under a court order when they searched Mr. Vasquez's text messages. Under *Leon*, this counsels in favor of deference in assessing good faith. Moreover, the SCA permits the government to obtain the content of text messages without first obtaining a warrant.[8] The Sixth Circuit decision in *Warshak*, the only decision holding the SCA unconstitutional, was not binding on the officers and prosecutors here. *See Warshak*, 631 F.3d at 291 ("it is manifest that the decisions of the Ninth Circuit are not binding on courts in this circuit").

Importantly, the Ninth Circuit has not addressed the issue presented herein. *See United States v. McCreary*, 308 F. App'x 39 (9th Cir. 2008). In the absence of clear authority to the contrary, the Court concludes that the good faith exception applies. *See Warshak,* 631 F.3d at 288–90 (applying the good faith exception, though the warrant sought the content of emails, where the government relied on the SCA); *United States v. Rigmaiden*, No. CR 08-814-PHX-DGC, 2013 WL 1932800, at *32 (D. Ariz. May 8, 2013) (same); *see also Krull* at 349-56 (applying the good faith exception where officers relied on a statute that was later found unconstitutional).

    a. <u>Failure to Notify Does Not Warrant Suppression</u>

Mr. Vasquez argues the Court should suppress the text messages because the Government failed to notify him of the order allowing the search. Mot. at 11-12. Where the government seeks to search content without first obtaining a warrant, the SCA requires the government to provide "prior notice . . . to the subscriber or customer." § 2703(b). However, the government may delay giving notice by ninety days, if such a delay is approved by the court. *Id*. (citing 18 U.S.C. § 2705

---

[8] Congress determined that content less than 180 days old still required a warrant, whereas older content could be obtained with a court order or subpoena. *See* 18 U.S.C. § 2703. It is not obvious why content of messages older than 180 days old is less deserving of constitutional protection than more recent messages.

15

(providing for delayed notice)).

The Government argues: (1) it was not obligated to provide notice until June 2012, and so the collection and search had occurred before any notification was required, and (2) the SCA itself precludes suppression as a remedy. Opp. at 29-30.

The Government is correct that the only remedy for violation of the SCA is a civil action against the government. *See* 18 U.S.C. § 2708 ("The remedies and sanctions described in this chapter are the only judicial remedies . . . for nonconstitutional violations . . . ."); *see also* §§ 2707, 2712 (providing for civil actions as remedies). The Ninth Circuit has stated as much, noting that if a searched voicemail message is subject to the Wiretap Act then suppression is an available remedy for any violation, but "[i]f the voicemail message at issue is subject to the strictures of the Stored Communications Act, then suppression is not an available remedy." *United States v. Smith*, 155 F.3d 1051, 1056 (9th Cir. 1998).

Mr. Vasquez does not argue that the failure to notify presents a constitutional problem. He seems to recognize this, and neglects to make any arguments about the failure to notify in his Reply. Accordingly, Mr. Vasquez's motion to suppress the text messages is **DENIED**.

4. 2010 Arrest for Possession of a Gun

Mr. Vasquez also seeks to suppress a firearm and ammunition recovered from him in his 2010 arrest. Mot. at 24-26. He argues he was unlawfully detained, searched, and arrested by the officers. *Id*. The Government argues that the officers had a valid reason to detain Mr. Vasquez. Opp. at 31. The totality of the circumstances shows the Government is correct.

The police report for the incident at issue explains that the officer had been called to the neighborhood in question because Mr. Vasquez's ex-girlfriend had telephoned for police help, claiming that Mr. Vasquez "had been stalking her" and "was out in front of her home." *See* Vasquez Ex. B at Vasquez0103, 0106. She described his physical appearance and clothing, stated he appeared to be high, and told the officers the direction in which he had gone. *Id*. While en route to the ex-girlfriend's house, an officer encountered someone matching the description the ex-girlfriend had provided. *Id*. This was Mr. Vasquez, and the officer detained him. *Id*. During this detention, Mr. Vasquez consented to be searched. *Id*.

16

The Ninth Circuit has upheld an "investigatory detention" even where the police forced the suspect to kneel, handcuffed him, and pointed their guns at him. *See United States v. Edwards*, 761 F.3d 977, 981-82 (9th Cir. 2014). It held the officers had reasonable suspicion to detain the suspect because, as in *Navarette v. California*, ___ U.S. ___, 134 S. Ct. 1683 (2014), they had received a 911 call in which:

> (1) the caller claimed eyewitness knowledge of the alleged dangerous activity, lending "significant support to the tip's reliability," . . .
>
> (2) the caller made a statement about an event "soon after perceiving that event," which is "especially trustworthy,". . .
>
> (3) the caller used 911, which "has some features that allow for identifying and tracing callers, and thus provide some safeguards against making false reports with immunity," . . . and
>
> (4) the caller created reasonable suspicion of an ongoing and dangerous crime—drunk driving—rather than "an isolated episode of past recklessness . . . .

*Edwards*, 761 F.3d at 984 (quoting *Navarette*, 134 S. Ct. at 1689-90). Here, as in *Navarette* and *Edwards*, Mr. Vasquez's ex-girlfriend reported an event at almost the same time it occurred; could be identified and traced by her call to the police (and in fact identified herself); claimed to have seen Mr. Vasquez personally; and reported "an ongoing and dangerous crime."[9] Vasquez Ex. B at Vasquez0103, 0106. Mr. Vasquez was thus described in detail by someone familiar with his appearance and who claimed he was committing a dangerous crime; he was detained when he matched the description, the behavior, and the location identified. *See* Vasquez Ex. B at Vasquez0103, 0106. There was thus reasonable suspicion under *Navarette* and *Edwards* to detain Mr. Vasquez, and the detention appears valid.

Mr. Vasquez claims he did not consent to be searched. Reply at 10-11. *First*, Mr. Vasquez seems to argue that he could not consent to be searched because he was "heavily intoxicated." *Id*. at 10. But intoxication alone is not enough to destroy consent. The Ninth

---

[9] Though Mr. Vasquez attempts to dismiss his actions as "standing outside his girlfriend's house calling her name," Opp. at 26, his ex-girlfriend characterized it as *stalking*, *see* Vasquez Ex. B at Vasquez0103, 0106. This is a serious crime in California. *See* Cal. Penal Code §§ 646.9-646.91a (criminalizing stalking and emphasizing the danger of the crime).

17

1 Circuit has found that a defendant was able to consent, though intoxicated, where he "gave his own version of the events, was able to answer the officer's questions and sign the consent form without any difficulty, was alert, cooperative, and steady on his feet . . . ." *United States v. Smith*, 616 F. App'x 362, 363 (9th Cir. 2015); *see also United States v. Hoobler*, 15 F.3d 1092 (9th Cir. 1994) (defendant was not too intoxicated to consent where he "was able to answer various questions the police asked him, did not answer other questions, and was able to fabricate a story"). Here, Mr. Vasquez was able to answer the officers' questions, was able to tell his side of the story, and was able to break free of an officer's grasp and run away. Vasquez Ex. B at Vasquez0106. The facts show that Mr. Vasquez was capable of consenting to a search.

*Second*, Mr. Vasquez cites *United States v. Brown*, 563 F.3d 410 (9th Cir. 2009) for the proposition that he did not voluntarily consent to be searched. However, the consent in *Brown* was held to be voluntary, despite the presence of facts far worse than those here. *See Brown*, 563 F.3d at 415-16. In that case, two defendants were "approached by five or six officers with guns drawn . . . and were both ordered to the ground, handcuffed, and patted down for weapons." *Id*. at 415. Here, Mr. Vasquez was dealing with two officers, and there is no indication their weapons were drawn at the time they asked permission to search him. Vasquez Ex. B at Vasquez0103, 0106. Nor was he handcuffed or ordered to the ground; the officer had him "sit on the curb until [the police] made contact with" Mr. Vasquez's ex-girlfriend. *See id*. Here, as in *Brown*, Mr. Vasquez "was not in custody, so *Miranda* warnings were inapposite.'" *Brown*, 563 F.3d at 416. As stated in *Brown*, the failure to inform Mr. Vasquez that he "had a right not to consent to the search . . . is not an absolute factor for a finding of voluntariness." *Id*. In the course of this search, the officers found a gun in Mr. Vasquez's pocket, and Mr. Vasquez attempted to flee. Vasquez Ex. B at Vasquez0103, 0106.

Applying *Edwards* and *Navarette*, the police detention of Mr. Vasquez was valid. Applying *Smith* and *Brown*, Mr. Vasquez's consent to search was voluntary and valid. Mr. Vasquez's motion to suppress his 2010 arrest is therefore **DENIED**.

D. <u>Conclusion</u>

For the foregoing reasons, the Court **DENIES** the Motion to Suppress.

This order disposes of Docket No. 616.

**IT IS SO ORDERED**.

Dated: June 3, 2016

_____
EDWARD M. CHEN
United States District Judge