UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 14-cr-00120-EMC |
| Plaintiff, | **REDACTED VERSION** |
| v. | **ORDER DENYING MOTION TO DEFENDANT ORTIZ'S MOTION TO SUPPRESS** |
| EDUARDO ALVAREZ, *et al.*, | |
| Defendant. | |

Defendant Miguel Ortiz filed a motion under seal ("Motion") to suppress evidence seized following a search of Mr. Ortiz's phone. The Government opposed this Motion ("Opposition"), also under seal. The Court heard argument on the Motion on June 3, 2016. Having considered the parties' briefs and the arguments presented at the hearing, the Court **DENIES** Mr. Ortiz's Motion to Suppress.

A.      Factual Background

On July 9, 2012, a judge of the Superior Court of California, San Francisco, issued a warrant to search Mr. Ortiz's phone. Mot. at 3. This warrant allowed the police:

- to obtain subscriber information for phone number ▮▮▮▮▮▮▮ (the "Phone Number"), Exhibit A to the Motion ("Exhibit A") at SW-0730;

- to install and use a pen register to obtain phone numbers "dialed or otherwise transmitted" from the Phone Number, including the date and time of the transmission and the length of any call, for a period of sixty days, *id*.;

- to install and use a "trap and trace device" to obtain incoming phone numbers and to record the date and time of the transmission, and the length of any call, also for a period of sixty days, *id*.;

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

- to install and use a device to obtain phone numbers to which the Phone Number sent, or from which it received, text messages, as well as to record the date and time of the text messages and the cell site location associated with the text message, *id*.; and

- to obtain subscriber information upon request, for each of the phone numbers obtained, *id*. at SW-0731.

The application for the warrant did not seek, and the warrant did not grant, the contents of calls or of text messages.  *See id*.

Sergeant Chorley of the San Francisco Police Department submitted an Affidavit of Probable Cause in support of the application for the warrant.  In his Affidavit, Sergeant Chorley recited his experience, including special training he has received.  *Id*. at SW-0733.  He then narrated events which he believed gave rise to probable cause. ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮   Based on these events, Sergeant Chorley believed that Mr. Ortiz "and other yet unknown co-conspirators . . . are involved in a conspiracy to distribute cocaine, cocaine base, and methamphetamine."  *Id*. at SW-0736.

1    Sergeant Chorley stated he "believe[d] that there [wa]s a fair probability that the

2    installation of a pen register and trap and trace device on" Phone Number would "provide

3    evidence that tends to show that a felony has been committed or that a particular person committed

4    a felony." *Id*. █████████████████████████████████████████████████████████

5    ███████████████████████████████████ He also explained that Mr. Ortiz had identified

6    Phone Number as his telephone number on July 5, 2012, during a traffic incident reported by the

7    California Highway Patrol. *Id*. at SW-0735.  Sergeant Chorley explained that he "kn[e]w that

8    narcotics dealers frequently communicate via telephone with suppliers and customers," and that he

9    knew Mr. Ortiz had used that telephone number to conduct at least one deal. *Id*. at SW-0736.

10   Based on this, Sergeant Chorley  "believe[d] that there [wa]s probable cause that the phone

11   numbers of incoming and outgoing text messages as well [as] the subscriber information for those

12   numbers w[ould] tend to reveal co-conspirators in the distribution of narcotics." *Id*.

13   B.    Analysis

14         1.    Legal Standard

15   The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const.

16   amend. IV.  It permits a warrant to issue only "upon probable cause, supported by Oath or

17   affirmation, and particularly describing the place to be searched, and the persons or things to be

18   seized." *Id*.  Probable cause exists when, "there is a fair probability that contraband or evidence of

19   a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  In

20   determining whether there is probable cause, judges are instructed to take "a practical, common-

21   sense" approach, and to consider "all the circumstances set forth in the affidavit before [the judge],

22   including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information . . . ."

23   *Id*.

24   Where a judge has issued a search warrant, that decision is reviewed "for clear error."

25   *United States v. Fernandez*, 388 F.3d 1199, 1252 (9th Cir. 2004), *as modified*, 425 F.3d 1248 (9th

26   Cir. 2005).  Deference is given to the judge's determination, and the reviewing court asks whether

27   "the [judge] had a substantial basis to conclude that the warrant was supported by probable cause."

28   *Id*.; *see also United States v. Vargem*, 566 F. App'x 580, 581 (9th Cir. 2014) ("The district court

United States District Court
For the Northern District of California

3

1    did not err in holding that the magistrate judge who issued the search warrant had a 'substantial

2    basis to conclude that the warrant was supported by probable cause'"").  Whether there is probable

3    cause is a "commonsense practical question," requiring "[n]either certainty nor a preponderance of

4    the evidence." *United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007).  Where a judge has

5    found probable cause, this "will not be reversed absent a finding of clear error." *United States v.*

6    *Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993).

7              Applying this standard here, the Court upholds the warrant as supported by probable cause.

8              2.        Probable Cause

9              Mr. Ortiz argues that the warrant did not establish probable cause to believe Mr. Ortiz was

10   involved in a drug conspiracy, or to believe his phone would have evidence of such a conspiracy.

11   Mot. at 9-14.  He argues that there was only one drug transaction, and the conclusions of Sergeant

12   Chorley, and that this is insufficient to support probable cause.  *Id*. at 10.

13             What Mr. Ortiz ignores, however, is that in addition to the "one completed drug

14   transaction," Sergeant Chorley had been told of two other events that indicated Mr. Ortiz was

15   involved in selling drugs.  Ex. A at SW-0734. ███████████████████████████

16   ████████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████████

18   ██████████████████████████████████████████████████████████

19   ███████████████████████████████████████████████████  These

20   events do not suggest a one-time drug sale; they suggest an ongoing business in the sale of drugs,

21   ███████████████████████████  Accordingly, the search warrant

22   application raised a "fair probability" that Mr. Ortiz was involved in a drug conspiracy.

23             Mr. Ortiz also argues there was no probable cause to believe his phone would have

24   evidence of any drug conspiracy.  Mot. at 9.  However, "[a] magistrate is entitled to draw

25   reasonable inferences about where evidence is likely to be kept," *United States v. Angulo-Lopez*,

26   791 F.2d 1394, 1399 (9th Cir. 1986), and "is entitled to rely on the training and experience of

27   police officers," *United States v. Gil*, 58 F.3d 1414, 1418 (9th Cir. 1995).  Here, Sergeant Chorley

28   had listened to Mr. Ortiz conduct a drug transaction using his phone.  *See* Ex. A at SW-0734.  He

4

United States District Court
For the Northern District of California

1    also stated that, from his experience, he "kn[e]w that narcotics dealers frequently communicate via

2    telephone with suppliers and customers." *Id*. at SW-0736.  The Superior Court judge could infer,

3    from the transaction in which Mr. Ortiz engaged in drug-related conduct telephonically that Mr.

4    Ortiz likely conducted other such transactions over the phone.  The Superior Court judge was also

5    entitled to rely on Sergeant Chorley's opinion that Mr. Ortiz was selling drugs by phone.  ▮▮▮▮

6    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  there was probable cause to

7    believe that evidence of the conspiracy would be found on Mr. Ortiz's phone.

8    　　　Next, Mr. Ortiz argues that "list[ing] a phone number as the place to be searched" lacks

9    particularity.  Mot. at 12.  He argues there was no reason to believe the Phone Number actually

10   belonged to Mr. Ortiz, and the warrant "could very well have caused the search of another's

11   phone." *Id*. at 12-13.  This argument lacks merit.  First, Sergeant Chorley told the issuing judge

12   that the CRI "had a phone conversation with Ortiz via" the Phone Number.  Ex. A at SW-0734.

13   That Mr. Ortiz actually used the Phone Number suggests it was likely his.  Second, Sergeant

14   Chorley refers to an incident reported by the California Highway Patrol.  In this report, Mr. Ortiz's

15   "phone number was listed as . . . ▮▮▮▮▮▮▮▮." *Id*. at SW-0735.  Sergeant Chorley thus heard

16   Mr. Ortiz using this phone number, and read a report in which Mr. Ortiz gave this phone number

17   to officers as his own. *See id*.  Because both are a good indication that the Phone Number actually

18   belonged to Mr. Ortiz, this argument fails.

19   　　　Finally, Mr. Ortiz argues that the warrant was "exceptionally overbroad," in seeking

20   information on numbers called to or from the Phone Number, "as it even included misdialed

21   numbers."  Mot. at 14.  "[T]he concept of breadth may be defined as the requirement that there be

22   probable cause to seize the particular thing named in the warrant." *In re Grand Jury Subpoenas*

23   *Dated Dec. 10, 1987*, 926 F.2d 847, 857 (9th Cir. 1991).  Here, the application for the warrant

24   explained that "the phone numbers of incoming or outgoing calls and the subscriber information

25   for those numbers will tend to reveal co-conspirators."  Ex. A at SW-0736.  Sergeant Chorley

26   informed the judge that he wanted to identify Mr. Ortiz's co-conspirators, and he asked for

27   information – phone numbers and the subscriber information associated with those phone numbers

28   – that would help him do so.  Mr. Ortiz's argument seems to be that not every person he contacted,

1    or who contacted him, was likely to be involved in the drug conspiracy.  However, law

2    enforcement could not as a practical matter search Mr. Ortiz's phone for only those persons with

3    whom he discussed drugs, or only those persons he intended to call or who intended to call him

4    about drugs; doing so would require knowing the content of those calls before even obtaining the

5    numbers associated with them.  It is therefore hardly surprising that pen registers and traps and

6    trace orders are commonly issued without a showing of probable cause.  *See* 18 U.S.C. § 3123(a)

7    (allowing a court to authorize a pen register, and not requiring probable cause).  For nearly four

8    decades, the law of this land has been that "[t]he installation and use of a pen register, . . . , [i]s not

9    a 'search,' and no warrant [i]s required."  *Smith v. Maryland*, 442 U.S. 735, 745-46 (1979).

10          Moreover, the warrant here was issued consistent with the standards set forth in the Pen

11    Register Act.  *See* 18 U.S.C. § 3123(a) (allowing a court to authorize a pen register if the law

12    enforcement officer "has certified to the court that the information likely to be obtained . . . is

13    relevant to an ongoing criminal investigation").  Indeed, a state court may issue such an order

14    under the Act.  § 3127(2) (clarifying that a state court may authorize the use of a pen register).

15    The warrant here, authorizing the acquisition of information was otherwise obtainable ~~as~~ on a

16    showing of less than probable cause, and so did not violate the Fourth Amendment.

17          3.    Third Parties

18          Mr. Ortiz argues that the warrant was "invalid on its face" because it allowed searches of

19    unidentified individuals.  Mot. at 5.  However, as to unidentified individuals, the warrant sought

20    only "subscriber information," such as billing addresses, contact information, and what type of

21    device was affiliated with the person's phone number.  Ex. A at SW-0731.  But "basic subscriber

22    information" is "less private than other records."  *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179-80

23    (9th Cir. 2013).  "[T]he government can obtain basic subscriber information . . . with a mere

24    subpoena."  *Id.*; *see also United States v. Corbitt*, 588 F. App'x 594, 595 (9th Cir. 2014) (holding

25    the defendant "ha[d] no reasonable expectation of privacy in the subscriber information").

26    Because obtaining this subscriber information does not require a warrant in the first place, the

27    Court cannot hold that these third parties' privacy rights were violated.

28          Moreover, it has long been established that "Fourth Amendment rights are personal rights

United States District Court
For the Northern District of California

1   which, like some other constitutional rights may not be vicariously asserted." *Brown v. United*

2   *States*, 411 U.S. 223, 230 (1973); *see also United States v. Payner*, 447 U.S. 727, 731 (1980) ("the

3   defendant's Fourth Amendment rights are violated only when the challenged conduct invaded *his*

4   legitimate expectation of privacy rather than that of a third party"). Thus, even if these

5   unidentified individuals' privacy rights had been violated – which they were not – Mr. Ortiz has

6   no standing to assert their rights on a basis for exclusion.

7          4.     Cell Site Location Information

8          Finally, Mr. Ortiz argues that a warrant was required to search Mr. Ortiz's cell site location

9   information. Mot. at 6-8. In support of this argument, Mr. Ortiz cites several decisions from this

10   District, wherein Judges Koh, Illston, and Orrick held that a warrant was required to search cell

11   site location information. *See* Mot. at 8 (citing *In re Application for Tel. Info. Needed for a*

12   *Criminal Investigation*, 119 F. Supp. 3d 1011 (N.D. Cal. 2015) (Koh, J.); *United States v. Cooper*,

13   No. 13-CR-00693-SI-1, 2015 WL 881578 (N.D. Cal. Mar. 2, 2015) (Illston, J.); *United States v.*

14   *Williams*, No. 13-CR-00764-WHO-1, 2016 WL 492934, at \*1 (N.D. Cal. Feb. 9, 2016) (Orrick,

15   J.)).

16          While the Court agrees that a warrant is required to search cell site location information,

17   *see* Docket No. 734 at 4, Sergeant Chorley obtained a warrant here, *see* Ex. A at SW-0728

18   ("Search Warrant"). And as explained above, this warrant was supported by probable cause.

19          For the reasons discussed above, Mr. Ortiz's Motion to Suppress is **DENIED**.

20          As noted at the beginning of this order, the briefs and exhibits for this Motion were filed

21   under seal. Where the Court has referred to sealed materials, it has provisionally redacted this

22   information. However, the Court believes that many of these redactions were unnecessary.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1   Accordingly, by June 20, 2016, Mr. Ortiz and the Government shall either stipulate that the Order

2   may be filed without redactions, or the party seeking to maintain the seal shall identify the exact

3   portions of the Order that need to be sealed and shall explain why each of those portions must be

4   sealed.

5

6          **IT IS SO ORDERED**.

7

8   Dated: June 10, 2016

9   _____

10                          EDWARD M. CHEN
                           United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28